UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SANDRA L. MERWIN,<br><br>            Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE[1],<br>Commissioner of Social Security,<br><br>            Defendant. | No. CV-06-5050-MWL<br><br>ORDER GRANTING DEFENDANT'S<br>MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are cross-motions for summary judgment, noted for hearing without oral argument on April 9, 2007. (Ct. Rec. 22, 26). Attorney D. James Tree represents Plaintiff; Special Assistant United States Attorney David M. Blume represents the Commissioner of Social Security ("Commissioner"). The parties have consented to proceed before a magistrate judge. (Ct. Rec. 6). After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment (Ct. Rec. 26) and **DENIES** Plaintiff's Motion for Summary Judgment (Ct. Rec. 22).

**JURISDICTION**

On September 21, 2005, Administrative Law Judge ("ALJ") William L. Stewart, Jr., issued a decision finding the plaintiff was not under a disability as defined in the Social Security Act at

---

[1] As of February 12, 2007, Michael J. Astrue succeeded acting Commissioner Linda S. McMahon as Commissioner of Social Security. Pursuant to Fed. R. Civ. P. 25(d)(1), Commissioner Michael J. Astrue should be substituted as Defendant, and this lawsuit proceeds without further action by the parties. 42 U.S.C. § 405 (g).

- 1 -

any time relevant to this matter. (Administrative Record, "AR," 23-32).

Plaintiff protectively filed an application for Supplemental Security Income ("SSI") benefits (AR 69-72) alleging disability since October 10, 2002, due to a herniated disc, sciatica, lower back and leg pain, difficulty concentrating, depression and anxiety attacks. (AR 69, 74-75, 113). The application was denied initially and on reconsideration.

At a hearing on December 10, 2004, plaintiff appeared pro se; her spouse and a vocational expert also appeared. (AR 233-264). On September 21, 2005, the ALJ issued a decision finding that plaintiff was not disabled. (AR 23-32). The Appeals Council denied a request for review. (AR 5-7). Therefore, the ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review pursuant to 42 U.S.C. § 405(g) on June 23, 2006. (Ct. Rec. 1, 4).

## **STATEMENT OF FACTS**

The facts have been presented in the administrative hearing transcript, the ALJ's decision, the briefs of both Plaintiff and the Commissioner and will only be summarized here. Plaintiff was 45 years old on the date of the ALJ's decision. (AR 69). She has a high school education and completed some college. (AR 79, 239). Plaintiff has worked as a hairstylist, a waitress/server, and a janitor. (AR 30, 75-76, 124).

At the administrative hearing held on December 10, 2004, plaintiff testified that she last worked as a janitor in October of 2002 but stopped because she injured her back. (AR 239-241). Plaintiff re-injured her back in June of 2003 helping her husband after he had back surgery. (AR 242-243). Plaintiff can sit for 90 minutes and walk or stand for 20 minutes. She shops for groceries but can only carry one bag. (AR 244, 246). Plaintiff has trouble sleeping in a bed and often needs to sleep in a reclining chair. (AR 244-246). She has panic attacks and depression. (AR 245). Plaintiff takes a thyroid medication, vicodin, soma, cymbalta, and ibuprofen. (AR 242). Pain medication makes her feel "kind of fuzzy." (AR 248).

Plaintiff's spouse, Charles Merwin, testified that plaintiff cannot sleep very long in one position, and has to get up and sleep in the recliner. (AR 253). Sitting causes back pain. (AR 255).

1  Vocational expert Lynn Jones testified that plaintiff's past work as a waitress/server is light
2  and semiskilled; as a janitor, medium and unskilled; as a hairstylist, light and semiskilled; and as a
3  retail sales clerk, light and semiskilled.   (AR 257-258).
4  Ms. Jones testified that a person with plaintiff's limitations could not do her past relevant
5  work.  (AR 258).   She testified that a person of plaintiff's age, educational level and exertional
6  limitations would be capable of performing a range of unskilled sedentary jobs,  such as
7  surveillance system monitor, call-out operator, and addresser.   (AR 259).
8  The ALJ found that the plaintiff could not perform her past relevant work.  (AR 30).  At
9  step five, the ALJ relied on the VE's testimony and found that other work exists in significant
10  numbers in the regional and national economy that plaintiff could perform. (AR 30-31).
11  Alternatively, the ALJ used the Grids as a framework and determined that plaintiff is not disabled.
12  (AR 32).
13  The ALJ concluded that the plaintiff retains the capacity for work that exists in significant
14  numbers in the national economy and is not disabled. (AR 31-32).

## **SEQUENTIAL EVALUATION PROCESS**

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a Plaintiff shall be determined to be under a disability only if any impairments are of such severity that a Plaintiff is not only unable to do previous work but cannot, considering Plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled.  20 C.F.R. §§ 404.1520, 416.920.  Step one determines if the person is engaged in substantial gainful activities.  If so, benefits are denied.  20 C.F.R. §§

404.1520(a)(4)(i), 416.920(a)(4)(i).  If not, the decision maker proceeds to step two, which determines whether Plaintiff has a medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If Plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied.  If the impairment is severe, the evaluation proceeds to the third step, which compares Plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1.  If the impairment meets or equals one of the listed impairments, Plaintiff is conclusively presumed to be disabled.  If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents Plaintiff from performing work which was performed in the past.  If a Plaintiff is able to perform previous work, that Plaintiff is deemed not disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  At this step, Plaintiff's residual functional capacity ("RFC") assessment is considered.  If Plaintiff cannot perform this work, the fifth and final step in the process determines whether Plaintiff is able to perform other work in the national economy in view of Plaintiff's residual functional capacity, age, education and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon Plaintiff to establish a *prima facie* case of entitlement to disability benefits.  *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is met once Plaintiff establishes that a physical or mental impairment prevents the performance of previous work.  The burden then shifts, at step five, to the Commissioner to show that (1) Plaintiff can perform other substantial gainful activity and (2) a "significant number of jobs exist in the national economy" which Plaintiff can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

## STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision.  42 U.S.C. § 405(g).  A Court must uphold the Commissioner's decision, made through an ALJ, when

the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## ALJ'S FINDINGS

The ALJ found at step one that plaintiff has not engaged in substantial gainful activity since her alleged onset date, October 10, 2002. (AR 24).[2] At step two, the ALJ found that plaintiff has

---

[2] The ALJ notes that this is a close question, given that plaintiff's income in 2003 was $10, 112. The ALJ elected, however, to proceed through all five steps of the sequential evaluation process. (AR 24).

the severe impairments of obesity, low back pain syndrome with degenerative disc disease, and a history of extruded disc fragment that resolved within 12 months, none of which alone or in combination met or medically equaled one of the Listings impairments. (AR 27).

At step four of the sequential evaluation process, the ALJ concluded that plaintiff has the RFC to perform nearly a full range of sedentary work. (AR 27-28). The ALJ determined that plaintiff is unable to perform her past relevant work. (AR 30).

At step five, the ALJ found that transferability of skills is immaterial. (AR 30). The ALJ determined, based on the vocational expert's testimony and plaintiff's RFC and vocational profile, that there were a significant number of jobs in the state and national economies which she could perform despite her limitations, including surveillance system monitor, call-out operator, and addresser. (AR 30). Alternatively, the ALJ relied on the Grids which direct a finding of not disabled. (AR 31-32). Accordingly, the ALJ determined at step five of the sequential evaluation process that plaintiff was not disabled within the meaning of the Social Security Act. (AR 31-32).

## **ISSUES**

Plaintiff contends that the Commissioner erred as a matter of law. Specifically, she argues that:

1. The ALJ did not properly consider and credit the opinions of plaintiff's treating physician, David Hagie, D.O.

2. The ALJ failed to consider the combined effects of all of plaintiff's impairments, including obesity.

3. The ALJ presented the vocational expert with an incomplete hypothetical, because it did not include plaintiff's need to recline during the day or the effects of medication on her ability to concentrate, and

4. The ALJ failed to fully and fairly develop the record on behalf of the pro se claimant.

This Court must uphold the Commissioner's determination that plaintiff is not disabled if the Commissioner applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision.

## DISCUSSION

**A. Medical Evidence**

Plaintiff contends that the ALJ erred by failing to properly credit the opinion of treating physician David Hagie, D.O. (Ct. Rec. 24 at 12). The Commissioner responds that the ALJ properly evaluated the medical evidence, including Dr. Hagie's opinions. (Ct. Rec. 27, pp. 7-11).

The courts distinguish among the opinions of three types of physicians: treating physicians, physicians who examine but do not treat the claimant (examining physicians) and those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chater,* 81 F.3d 821, 839 (9th Cir. 1996). A treating physician's opinion is given special weight because of his familiarity with the claimant and his physical condition. *Fair v. Bowen,* 885 F.2d 597, 604-05 (9th Cir. 1989). Thus, more weight is given to a treating physician than an examining physician. *Lester*, 81 F.3d at 830. However, the treating physician's opinion is not "necessarily conclusive as to either a physical condition or the ultimate issue of disability." *Magallanes v. Bowen,* 881 F.2d 7474, 751 (9th Cir. 1989) (citations omitted).

The Ninth Circuit has held that "[t]he opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester*, 81 F.3d at 830. Rather, an ALJ's decision to reject the opinion of a treating or examining physician, may be *based in part* on the testimony of a non-examining medical advisor. *Magallanes*, 881 F.2d at 751-55; *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). The ALJ must also have other evidence to support the decision such as laboratory test results, contrary reports from examining physicians, and testimony from the claimant that was inconsistent with the physician's opinion. *Magallanes*, 881 F.2d at 751-52; *Andrews*, 53 F.3d 1042-43. Moreover, an ALJ may reject the testimony of an examining, but non-treating physician, in favor of a non-examining, non-treating physician only when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence. *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995).

The ALJ adopted all of the limitations assessed by Dr. Hagie except one: Dr. Hagie opined

that plaintiff could stand or walk less than 2 out of 8 hours; while the ALJ found that plaintiff could walk or stand up to 2 out of 8 hours. (AR 148, AR 28). The ALJ found Dr. Hagie's limitation was not supported by the evidence. (AR 24-26). .

The ALJ noted that plaintiff saw Dr. Hagie on October 9, 2002, after experiencing low back pain radiating into her left leg for two weeks. (AR 24, referring to Exhibit 6F at AR 159). Dr. Hagie found no significant objective abnormality on physical examination and recommended conservative treatment with ice, heat and anti-inflammatory medication. (AR 24, referring to AR 159-162). On November 1, 2002, an MRI of plaintiff's lumbar spine showed a bulging disc at L4-5 and an extruded disc fragment at L5-S1, considered the likely cause of some nerve impingement. (AR 24, citing Exhibit 6F at AR 165-166). The ALJ observed that when plaintiff was seen for routine care on November 4, 2002, at the Medford Medical Clinic, she did not report any back or leg pain, and the examining physician, Keith Williams, M.D., noted no objective findings indicative of a lumbar condition. (AR 24-25, referring to AR 128-129). At this appointment (after the onset date), plaintiff described herself as a self-employed night janitor. (AR 25, relying on AR 128).

Plaintiff underwent physical therapy. (AR 25). Dr. Hagie opined on November 19, 2002, that physical therapy was going well; plaintiff performed home exercises daily and swam twice weekly. (AR 25, referring to AR 155). When plaintiff next saw Dr. Hagie on January 10, 2003, she had stopped physical therapy, was very active caring for an elderly neighbor, and worked full-time as a janitor. (AR 25, citing Exhibit 6F at AR 153). About 3 months after onset, Dr. Hagie advised plaintiff to use ice and heat to manage her occasional lumbar symptoms but did not restrict her normal activities or work-related tasks. (AR 25, AR 155).

Plaintiff returned to Dr. Hagie more than 2 months later, on March 28, 2003. Dr. Hagie opined that plaintiff did "quite well" with physical therapy and conservative treatment. (AR 25, referring to AR 152). The ALJ pointed out Dr. Hagie's report that plaintiff's extruded L5-S1 disc fragment visible in the November 2002 MRI was "being cleared by the patient's immune system," and he expected plaintiff to be "essentially pain free" by September of 2003. (AR 25, AR 152). Dr. Hagie noted that plaintiff continued to work as a janitor and she had only reduced her strenuous work activities a bit. (AR 25, AR 152). He recommended that plaintiff continue

increasing her exercise level to include lap swimming and riding a recumbent bicycle. (AR 25, AR 152). Plaintiff returned four months later, on July 28, 2003, stating that since her husband underwent fusion surgery seven weeks ago, "she has been doing pretty much all of their janitorial business including a lot of mopping." (AR 25, AR 151). Dr. Hagie found no significant clinical findings on exam and again assessed no restrictions on plaintiff's capacity for normal activity or continued full-time janitorial work. (AR 25, citing Exhibit 6F at AR 151).

Plaintiff returned three months later, on October 2, 2003 [3] (about a year after onset), complaining of recently increased low back pain. (AR 25, AR 150). Dr. Hagie's exam did not reveal an etiology for plaintiff's complaints of increased lumbar pain. On October 13, 2003, Dr. Hagie reviewed a second MRI which showed no evidence of the extruded L5-S1 disc fragment seen on the previous (November of 2002) MRI. (AR 149). Dr. Hagie found no evidence of nerve root impingement, stenosis, or significant disc abnormality. (AR 149). He noted that "(s)he is actually quite mobile in the lumbar spine when I attempt to mobilize her." (AR 149). Dr. Hagie offered plaintiff continued conservative treatment with osteopathic manipulation and physical therapy. (AR 149). Again, the ALJ noted, Dr. Hagie did not restrict plaintiff's capacity for normal activity or work-related tasks. (AR 25, citing Exhibit 6F at AR 149).

Dr. Hagie referred plaintiff to orthopedic surgeon Paul Amstutz, M.D., who evaluated her on October 30, 2003. (AR 188-191). Plaintiff described herself as a person "who runs a janitorial business" and "enjoys gardening, reading, and walking." (AR 25, citing Exhibit 11F at AR 189). Based on physical examination, Dr. Amstutz found that the lumbosacral region showed no irregularity in appearance, alignment, or paraspinal muscle tone. (AR 25, AR 189). He found no tenderness to palpitation or gross joint instability; strength was 5/5 in the iliopsoas, abductors, adductors, and hamstrings; sensory findings were within normal limits; reflex findings in the knees and ankles were slightly decreased; there was no evidence of lower extremity edema, and bilateral straight leg raising and Patrick's maneuver were unremarkable. (AR 25, AR 189). Dr. Amstutz summarized plaintiff's minimal physical findings, noted the significant improvement between the

---

[3] The ALJ erroneously stated the date was October 13, 2003. This is clear because the ALJ stated Dr. Hagie referred plaintiff for second MRI on Ocotber 6, 2003.

- 9 -

first and second MRI's, and recommended an anti-inflammatory medication with the option of epidural or facet joint injections. (AR 25-26, citing Exhibit 11F at AR 190-191).

When plaintiff returned to Dr. Hagie[4] on November 13, 2003, she reported that treatment with ibuprofen had "really been very helpful for her" but she experienced some gastrointestinal side-effects from it. (AR 26, referring to Exhibit 11F at AR 187). At this visit plaintiff reported that she used an exercise bike. (AR 187). Dr. Hagie reported that plaintiff hopes "to improve enough in a couple of months to be able to go back to work." (AR 187). The ALJ noted that plaintiff agreed to undergo a series of three epidural steroid injections which began on January 6, 2004, and proceeded without complication. (AR 26, citing Exhibit 11F). On February 13, 2004, Dr. Hagie opined in a physical capacities questionnaire that plaintiff could perform substantial gainful activity at the sedentary level. He further opined that to return to her janitorial job likely would require more accommodation than could be made, based on the job description. (AR 148). The ALJ noted:

"Although Dr. Hagie's opinions regarding the claimant's work activities appear unduly restrictive in view of the minimal evidence of clinical abnormality summarized in his and Dr. Amstutz's treatment notes, the restrictions he identified in the questionnaire of February 13, 2004, have been incorporated into the assessment of residual functional capacity in this decision in order to view his treating source opinions in a light most favorable to the claimant (Social Security Ruling 96-2p)."

AR 26.

Specifically, Dr. Hagie opined that though plaintiff is released for work activity, she requires retraining in a new occupation. (AR 148). He opined that plaintiff needs to periodically alternate between sitting and standing, can occasionally lift 10 pounds, frequently lift less than 10, stand or walk less than 2 hours, sit 6 hours or less out of 8, and is not limited in pushing or pulling. (AR 148). Dr. Hagie opined that plaintiff could occasionally climb, balance, and kneel; and never stoop, crouch or crawl. (AR 148). Plaintiff contends that if the ALJ adopted Dr. Hagie's RFC in total, a disability finding would be required. Plaintiff appears to overlook the fact that the ALJ

---

[4]The ALJ mistakenly attributes this visit to Dr. Amstutz. (AR 26, referring to AR 187).

- 10 -

relied on other evidence when he failed to completely adopt Dr. Hagie's assessment.

The ALJ notes that plaintiff saw Dr. Hagie again on February 26, 2004. (AR 26, AR 181). She described significant relief after her first injection but no significant relief with subsequent injections. (AR 181). Dr. Hagie's physical exam was benign and he again referred plaintiff to Dr. Amstutz for further evaluation. (AR 181). Dr. Amstutz's exam results on March 3, 2004, were unremarkable. (AR 26, AR 179-180). The ALJ observed that although Dr. Amstutz "speculated that the claimant may be experiencing some discogenic pain based upon a slight displacement of the L5-S1 disc to the left of midline," the doctor assessed no work or activity related restrictions. (AR 26, AR 179-180).

Plaintiff initiated treatment with Allen Thomashefsky, M.D., on March 16, 2004, for a series of injections to the sacroiliac ligaments. (AR 26, AR 194). On May 11, 2004, he described plaintiff as "markedly better," and on July 20, 2004, Dr. Thomashefsky indicated plaintiff has "done very well." (AR 26, AR 192). On July 20, 2004, he indicated as part of his plan that plaintiff "has got to walk or do the stationary bicycle 40 - 60 minutes a day" to lose weight. (AR 192).

When weighing the medical evidence to determine plaintiff's RFC, the ALJ considered the credibility of plaintiff and of her spouse. (AR 28-30). It is the province of the ALJ to make credibility determinations. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). However, the ALJ's findings must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Once the claimant produces medical evidence of an underlying impairment, the ALJ may not discredit her testimony as to the severity of an impairment because it is unsupported by medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (citation omitted). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

The ALJ considered all of the evidence submitted related to plaintiff's subjective

complaints, including: (1) her statements to treating physicians that she continued to work as a night janitor even after onset in October of 2002; (2) plaintiff's testimony that she did not work as a janitor after onset; and (3) records of plaintiff's earnings for 2003 of $10, 112.  (AR 28-29).  The ALJ also observed that in May of 2003, when plaintiff was working as a janitor, she reported to Social Security that she was unable to lift more than 5 pounds or sustain any activity for more than 5 minutes at a time.  (AR 29).  The ALJ found that plaintiff's spouse's testimony that she is unable to sit for prolonged periods is undercut by her testimony that she can sit for 90 minutes at a time.  (AR 30).   The ALJ noted other inconsistencies: Mr. Merwin testified that plaintiff's activities of daily living are significantly limited by back pain.  In June of 2003, Mr. Merwin reported that plaintiff "takes care of me" and the "house."  (AR 30).  Also, the ALJ noted that on June 21, 2003, Mr. Merwin reported that plaintiff performs such activities as gardening, laundry, and light housekeeping.  (AR 30).  Mr. Merwin did not disclose that plaintiff was responsible for all of the physical labor in their janitorial business during the summer of 2003 when he was recovering from fusion surgery.  (AR 30).

The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  If evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984).  It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400.  The Court thus has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ even if it might justifiably have reached a different result upon de novo review.  42 U.S.C. § 405(g).

Contrary to plaintiff's argument, the ALJ properly considered the opinions of Dr. Hagie. The ALJ  gave a number of specific reasons, including objective test results and plaintiff's ability to perform medium work after onset, for discounting one of Dr. Hagie's assessed limitations.  These reasons are supported by substantial record evidence.  Since the ALJ's finding regarding plaintiff's limitations is consistent with the credible medical and other evidence of record, the undersigned finds that plaintiff's argument to the contrary is without merit.

**B. Combined effects of all impairments, including obesity**

Plaintiff argues that the ALJ erred because he failed to consider the combined effects of all of impairments, including obesity. (Ct. Rec. 24 at 13). The Commissioner responds that the ALJ found that plaintiff's obesity and back impairments are severe; the ALJ assessed an RFC nearly identical to Dr. Hagie's February of 2004 assessment, and plaintiff fails to show that her obesity caused additional functional limitations. (Ct. Rec. 27 at 11).

Dr. Hagie diagnosed plaintiff as mildly obese[5] and later opined that plaintiff could perform sedentary work. (AR 159, 148). The medical record does not show that Dr. Hagie changed his obesity diagnosis. The ALJ found that obesity was a severe impairment, and, with a minor modification noted, adopted Dr. Hagie's RFC. Plaintiff's argument that the ALJ failed to consider the effects of obesity combined with other impairments is not supported by the record.

**C. Incomplete Hypothetical**

The ALJ did not include plaintiff's need to recline or the effects of medication on her ability to concentrate in his hypothetical to the vocational expert. (AR 258). Plaintiff contends that this is error. (Ct. Rec. 24, pp. 13-14). The Commissioner responds that the ALJ properly rejected these limitations because they were unsupported by the medical evidence and were less than credible. (Ct. Rec. 27, pp. 11-13).

The ALJ is correct that no physician has opined that plaintiff is required to recline during the day. (AR 29). The only evidence supporting this limitation is the discredited testimony of plaintiff. Although her spouse testified that plaintiff sometimes sleeps in a reclining chair, he did not testify that she must recline during the day. Similarly, the only evidence that medication makes plaintiff "fuzzy" is her less than fully credible testimony. Moreover, plaintiff asked the VE about the effects of medication with respect to the identified available jobs, and the VE replied that the job of addresser would remain within plaintiff's RFC. (AR 260-261). The ALJ appropriately relied on plaintiff's ability to work, among other factors, as demonstrating that she was less than fully credible and physically able to work. Because the ALJ's credibility determination was without

---

[5] Dr. Hagie's obesity diagnosis on October 9, 2002, was based on plaintiff's height of 5'3" and weight of 210 pounds, resulting in a BMI of 37. (AR 159).

error, the ALJ was not required to include discredited limitations in his hypothetical to the vocational expert.

**D. Failure to Fully Develop Record on Behalf of Pro Se Plaintiff**

Plaintiff contends that the ALJ failed to fully and fairly develop the record on behalf of plaintiff, who appeared pro se. (Ct. Rec. 24, pp. 14-19). Specifically, plaintiff contends that the three jobs identified by the vocational expert are not suitable for plaintiff because they are all semi-skilled rather than unskilled. Plaintiff contends that the VE relied on outdated information from the 1977 DOT when she identified these jobs, something an unsophisticated pro se plaintiff would not know but the ALJ should. (Ct. Rec. 24 at 17). The Commissioner responds that the ALJ could rely primarily on the DOT and "had to explain any deviation from it." (Ct. Rec. 27 at 14)(citations omitted).

Plaintiff incorrectly asserts that the DOT has not been updated since 1977. The DOT was updated in 1991. The numbers given by the VE for the 3 jobs within plaintiff's RFC are not "obsolete," as plaintiff alleges. Rather, the 1991 DOT lists each of the 3 jobs identified by the VE under the numbers she used; each is a sedentary position with an SVP of $2^6$. Plaintiff contends that other ALJ's routinely testify that some of these positions are outdated; however, that was not the VE's testimony in this case. The VE's reliance on the DOT was proper. 20 C.F.R. § 416.966(d)(1). It appears that the ALJ appropriately accepted the vocational expert's testimony and determined that there were a significant number of jobs in the regional and national economies which plaintiff could perform despite her limitations. (AR 259). Accordingly, the ALJ properly relied on the VE's testimony that there are jobs a person with plaintiff's limitations could perform.

## CONCLUSION

Having reviewed the record and the ALJ's conclusions, this Court finds that the ALJ's decision that plaintiff is able to perform less than a full range of sedentary unskilled work is supported by substantial evidence and free of legal error. Therefore, Plaintiff is not disabled within the meaning of the Social Security Act. Accordingly,

---

[6]Using the skill level definitions in 20 CFR 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2. SSR 00-4P.

**IT IS ORDERED**:

1. Plaintiff's Motion for Summary Judgment (**Ct. Rec. 22**) is **DENIED**.

2. Defendant's Motion for Summary Judgment (**Ct. Rec. 26**) is **GRANTED**.

3. The District Court Executive is directed to enter judgment in favor of Defendant, file this Order, provide a copy to counsel for Plaintiff and Defendant, and **CLOSE** this file.

IT IS SO ORDERED.

**DATED** this 2nd day of May, 2007.

                                                s/Michael W. Leavitt
                                                MICHAEL W. LEAVITT
                                       UNITED STATES MAGISTRATE JUDGE